UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| BARRI GAY, | ) |
|     Plaintiff, | ) ) ) |
| v. | )   Case No. 25-3009-CSB |
| JOSHUA McDANNALD, *et al.*, | ) ) ) |
|     Defendants. | ) |

<u>**MERIT REVIEW ORDER**</u>

**COLIN S. BRUCE, United States District Judge:**

Pro se Plaintiff Barri Gay has filed a Complaint (Doc. 1) under 42 U.S.C. § 1983, which is before the Court for screening, together with a Motion for Preliminary Injunction (Doc. 5) and Motions to Request Counsel (Docs. 4, 9).

## I. COMPLAINT

### A. Screening Standard

The Court must "screen" Plaintiff's Complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. In reviewing the complaint, the Court accepts the factual allegations as accurate, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient.

Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

**B. Facts Alleged**

At all times relevant to his Complaint, Plaintiff was an inmate at Taylorville Correctional Center ("Taylorville").

Plaintiff's suit names the following Defendants at Taylorville: Warden Joshua McDannald, Director of Nursing ("DON") Jacquelyn Dumonceux, Registered Nurse Kristen Lubebu, Nurse Practitioner Krista Tipton, Nurse Pat (last name unknown), and John and Jane Doe health care providers. In the case caption, Plaintiff also lists the State of Illinois and the Illinois Department of Corrections ("IDOC").

On March 9, 2024, Plaintiff alleges that he was using the telephone in housing unit 2B when two inmates told him that if he did not end the call immediately they would take all of his property. Plaintiff alleges that he made eye contact with an officer, who heard the threat.

The inmates proceeded to Plaintiff's room. Plaintiff followed them, allegedly assuming that the officer was just behind him. Instead, Plaintiff was physically attacked by the other inmates.

Plaintiff alleges that the administration at Taylorville was aware of ongoing issues regarding phone usage in unit 2B because on March 8, 2024, another inmate was moved out of 2B due to "phone bullying." Plaintiff alleges that there was a "phone list policy in place to minimize the risk of dangers to inmates" but that the administration chose not to utilize or enforce it in all housing units.

During the attack on May 9, 2024, Plaintiff's foot got caught under the metal bunkbed platform, his body twisted, he hit his face on the bunk, and he broke his foot and ankle and dislocated his foot.

Plaintiff was taken to the prison Health Care Unit ("HCU") and then sent to the hospital. On March 19, 2024, Plaintiff underwent surgery, which included the placement of seven screws. Plaintiff's surgeon directed that pain medication should be regularly administered for the first 24 hours. Plaintiff returned to the Taylorville HCU. On March 20, 2024, Plaintiff asked Defendant Tipton why he had not yet received any pain medication. Defendant Tipton confirmed that Dr. Goodman, his doctor at Taylorville, had signed orders prescribing pain medication Percocet, as recommended by the surgeon, but Tipton allegedly told Plaintiff that the DON Defendant Dumonceux was "against the usage of percocet" and was therefore "going to make sure that the doctor really wanted to administer this drug." However, when Plaintiff complained, Tipton said the prescription would be filled.

Plaintiff did not receive his first dose of pain medication until more than 24 hours after his surgery. On March 21, 2024, he alleges that he had to be rushed to an outside hospital, due to excruciating pain, and was given fentanyl.

When Plaintiff returned to Taylorville on March 22, 2024, he was moved to segregation. He alleges that he suffered severe pain due to his pain medications being delivered late from March 22 to March 27, 2024. Defendant Pat told Plaintiff that his evening dose on March 27 was his last pain medication. Plaintiff complained to nursing staff that he was in excruciating pain from March 27 through April 2, after which he

was prescribed tramadol until April 8, 2024. In total, Plaintiff alleges that for 8 of the 21 days following his surgery, he went without pain medication. Plaintiff continued to put in requests to see Dr. Goodman, but his requests were ignored or denied by staff in the Taylorville HCU.

Plaintiff did not see his surgeon for a follow-up visit until June 16, 2024. His surgeon ordered physical therapy for Plaintiff for four weeks, as well as a follow-up visit in three weeks. Plaintiff alleges that Defendant Demonceux denied his follow-up visit with the surgeon.

Plaintiff saw a physical therapist for a consultation on August 4, 2024. The physical therapist recommended a different shoe for support and stability, as well as physical therapy two times per week for three weeks. On August 16, 2024, Defendants McDannald, Demonceux, and Tipton denied Plaintiff's request for the recommended shoes.

Dr. Goodman saw Plaintiff at Taylorville on September 24, 2024, and ordered x-rays and a follow-up appointment with Plaintiff's surgeon. Plaintiff alleges Defendant Demonceux denied the follow-up appointment.

Plaintiff did not begin physical therapy until November 12, 2024, and received only five of the eight sessions. Plaintiff did not see his surgeon until December 2, 2024. The surgeon took x-rays, which he told Plaintiff showed that the long screw connecting his foot and ankle was broken. The surgeon prescribed Plaintiff a brace, a cane, and shower accommodations. Plaintiff alleges that Defendant Demonceux denied his cane and brace.

**C. Analysis**

In order to state an Eighth Amendment claim of deliberate indifference to a serious medical need, a complaint must adequately allege that (1) the plaintiff had an objectively serious medical need, and (2) the defendant was deliberately indifferent to that need. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

Plaintiff has adequately alleged that he suffered from a serious medical condition due to a broken and dislocated foot and ankle that required surgery involving the placement of multiple screws and caused severe pain. See *Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017) ("Objectively serious medical needs are those that have either been diagnosed by a physician and demand treatment, or are 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'").

"Failing to provide care for a non-medical reason, when that care was recommended by a medical specialist, can constitute deliberate indifference." *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); see also *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (A doctor's "refus[al] to take instructions from a specialist" may constitute evidence that the doctor knew their treatment decisions created a serious risk to an inmate's health.).

Here, Plaintiff has alleged that Defendant Dumonceux denied him prescribed pain medication for the first 24 hours and denied him medical permits or assistive devices (shoes, cane, brace) as well as recommended follow-up care with the surgeon and physical therapy. Plaintiff has also alleged that Defendants McDannald and Tipton were involved in denying his medical shoes recommended by the physical therapist.

Therefore, Plaintiff may proceed on an Eighth Amendment deliberate indifference claim against each of these individual Defendants.

Likewise, Plaintiff alleges that one or more Doe Defendants in the Taylorville HCU delayed or denied him pain medication and an appointment with Dr. Goodman. Plaintiff may also proceed on a deliberate indifference claim against these Doe Defendants, including Nurse Pat "Doe." See *Smego v. Mitchell*, 723 F.3d 752, 757 (7th Cir. 2013) ("Even personnel who are not doctors are not permitted simply to ignore a detainee's plight, nor can they deliberately obstruct or delay a patient from receiving necessary treatment." (internal citations omitted)).

However, Plaintiff has not stated a claim against Defendants Lubebu, the State of Illinois, or IDOC. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Here, Plaintiff's Complaint does not contain any relevant allegations about actions taken by Defendant Lubebu.

As for the State of Illinois and IDOC, there is no vicarious liability under § 1983 solely based upon an employer relationship. See *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 692 (1978); *Brown v. Randle*, 847 F.3d 861, 865 (7th Cir. 2017). Rather, to proceed on a claim against a government entity, Plaintiff must allege "(1) that he…suffered a deprivation of a constitutionally protected interest, and (2) that the deprivation was caused by an official policy, custom or usage" of that defendant,

acting under color of state law. *Powe v. City of Chicago*, 664 F.2d 639, 643 (7th Cir. 1981); *Shields v. Illinois Department of Corrections*, 746 F.3d 782, 789-90 (7th Cir. 2014).

Plaintiff has not plausibly alleged that any official policy or custom of the State of Illinois or IDOC resulted in the violation of his constitutional rights.  Plaintiff's Complaint does not contain any allegations regarding policies that impacted his medical care or treatment.

And while Plaintiff alleges that there was a "phone list policy" that was not enforced in various areas of Taylorville, there is insufficient information pled regarding the content of that policy and the decisionmakers responsible for its non-enforcement. Therefore, Plaintiff likewise cannot pursue a *Monell* claim based upon the physical attack resulting in Plaintiff's injuries.

## II. PRELIMINARY INJUNCTIVE RELIEF

Plaintiff has also filed a Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 5), together with a Declaration (Doc. 6) in support thereof.

**A.  Standard**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); accord *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right"). To prevail, "the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) an irreparable harm will result if the injunction is not granted." *Foodcomm International v.*

*Barry*, 328 F.3d 300, 303 (7th Cir. 2003) (citations omitted). If the moving party meets the first three requirements, then the district court balances the relative harms that could be caused to either party. *Incredible Technologies, Inc. v. Virtual Technologies, Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005).

The Prisoner Litigation Reform Act ("PLRA") limits the scope of the court's authority to enter an injunction in the corrections context. *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); see also *Westefer*, 682 F.3d at 683 (PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).

**B. Facts Alleged**

Plaintiff's Motion and supporting Declaration recite many of the facts alleged in the Complaint regarding the denial of appropriate medical care, devices, and accommodations prescribed by his surgeon and physical therapist. Plaintiff alleges he suffers from "ongoing pain, swelling, stiffness, limited range of motion, shifting and clicking of ankle when he walks, a pronounced limp, and a broken screw in his leg and foot."

Plaintiff asks that this Court enter an Order directing Defendants McDannald and Demonceux (1) to arrange for Plaintiff to be examined by an orthopedic specialist

who should evaluate the current condition of his right ankle and foot and prescribe physical therapy to restore the full function of his right ankle, (2) to provide Plaintiff with a cane and brace, and (3) to allow Plaintiff to procure the shoes recommended by the physical therapist.

**C. Analysis**

The purpose of a temporary restraining order or preliminary injunction is to preserve the status quo pending a final hearing on the merits of the case. *American Hospital Association v. Harris*, 625 F.2d 1328, 1330 (7th Cir. 1980).

Rather than seeking to preserve the status quo, Plaintiff is seeking an order requiring affirmative acts by Defendants, which constitutes a mandatory preliminary injunction. See *Graham v. Medical Mutual of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," because they require the court to command a defendant to take a particular action. *Id.*, citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)); see also *W.A. Mack v. General Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958) (mandatory injunctions very rarely issue, except on the clearest equitable grounds).

Based upon the record before it, the Court finds that Plaintiff has a good likelihood of success on the merits of his deliberate indifference claim.

However, the likelihood of irreparable harm at this stage is mixed. The Court finds relevant Plaintiff's statement in his Declaration, in which he indicated that the physical therapist told him that "there was little to be gained" from physical therapy, due to the delays in scheduling that had already occurred from March to November

2024. An additional 1.5 years have elapsed since November 2024, and the Court can only reasonably conclude that the passage of time has not increased the likelihood that mandating additional therapy can restore Plaintiff's full mobility.

The Court does not discount the pain or discomfort that Plaintiff faces, nor the fear that his mobility will be permanently limited. Still, mindful that mandatory injunctions are very sparingly issued, the Court denies Plaintiff's request that the Court order Defendants to provide a specific referral, treatment, or equipment at this time. The Court advises, however, that this denial is without prejudice to Plaintiff filing a future request for temporary injunctive relief.

### III. REQUEST FOR COUNSEL

Finally, Plaintiff has filed a form Motion to Request Counsel (Doc. 4), followed by a supplemental filing (Doc. 9) summarizing the attorneys he had contacted to request assistance and listing further reasons that he is asking for appointment of counsel.

A *pro se* litigant has no right to counsel in a civil case. *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). However, the federal statute authorizing *in forma pauperis* status provides a court "may request an attorney to represent any person unable to afford counsel." See 28 U.S.C. 1915(e)(1). A court does not have the authority to require an attorney to accept *pro bono* appointments in civil cases. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007).

When confronted with a request for *pro bono* counsel under 28 U.S.C. §1915(e)(1), the district court is to make the following inquiries: (1) whether the indigent plaintiff

made a reasonable attempt to obtain counsel or has been effectively precluded from doing so; and if so, (2) given the difficulty of the case, whether the plaintiff appears to be competent to litigate it himself. *Pruitt*, 503 F.3d at 654-55.

The first inquiry is a mandatory threshold determination and requires the plaintiff attempt to obtain a lawyer independently. *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021). Plaintiff indicates, in his later filing, that he has written to at least eight law firms or attorneys. He has received only two responses, declining to represent him. Therefore, the Court finds Plaintiff has satisfied the first, threshold inquiry.

Turning to the second element of the inquiry, the district court must undertake "the individualized analysis that *Pruitt* requires[.]" *Navejar v. Iyiola*, 718 F.3d 692, 697 (7th Cir. 2013). Specifically, the court must consider "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt*, 503 F.3d at 655. This inquiry must be a "practical one, made in light of whatever relevant evidence is available on the question." *Id*. The court should take account of all evidence in the record relevant to the plaintiff's ability to litigate. *Navejar*, 728 F.3d at 696. Such evidence may include any physical, intellectual, or psychological limitations the plaintiff may have and the practical problems the plaintiff may encounter in gathering evidence from individuals employed by an institution where he is no longer housed. *Navejar*, 718 F.3d at 698.

Assistance in recruiting counsel is appropriate only where the plaintiff shows his case is one of those few in which it appears from the record the legal and factual

difficulty exceeds his ability to prosecute. *Pruitt*, 503 F.3d at 654-55. This question is different from whether a lawyer might do a better job. *Id.*

In Plaintiff's Motion, he indicates that he has completed some college. However, he asserts that this is a complex case, he will face limitations to his ability to participate in discovery—including expert discovery—due to his status as an inmate, and he has limited knowledge of the law and no federal litigation experience.

Recruiting *pro bono* counsel in this District is difficult, as the need far exceeds the supply. *McCaa v. Hamilton*, 959 F.3d 842, 845 (7th Cir. 2020) ("District courts are thus inevitably in the business of rationing a limited supply of free lawyer time."). Although "[a]lmost everyone would benefit from having a lawyer, [] there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases. *Dewitt*, 760 F.3d at 657 (internal quotation omitted); *Mejia v. Pfister*, 2021 WL 647085, * 4 (7th Cir. Feb. 19, 2021) ("[F]or its part, the district court found itself having to [choose] how best to allocate scarce resources, for it remains the sad reality that there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." (Internal quotation omitted)).

Although Plaintiff's case does involve medical issues, Plaintiff's Complaint and the exhibits attached thereto make clear that Plaintiff has access to his medical records and is able to summarize the relevant occurrences. More generally, upon review of Plaintiff's filings to date, the Court finds Plaintiff to have clearly articulated relevant facts and cited relevant caselaw. As to participation in discovery, the Court will issue a Scheduling Order that is meant to assist Plaintiff in understanding the relevant

procedures and the discovery process—which consists of written discovery and requests for documents or other evidence.

All federal lawsuits bear a level of complexity. But the Court, on the specific facts of this case, finds Plaintiff can represent himself at this time.

**IT IS THEREFORE ORDERED:**

1) **According to the Court's Merit Review screening of Plaintiff's Complaint under 28 U.S.C. § 1915A, Plaintiff has alleged enough facts to proceed with an Eighth Amendment claim of deliberate indifference to a serious medical condition against Defendants McDannald, Dumonceux, Tipton, Nurse Pat "Doe," and John/Jane Does. Defendant McDannald will also remain in his official capacity, for purpose of participating in discovery to identify the Doe Defendants and to carry out any injunctive relief. Additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.**

2) **The Clerk is directed to dismiss the following Defendants: Kristen Lubebu, the State of Illinois, and the Illinois Department of Corrections.**

3) **Plaintiff's Motion for Preliminary Injunction [5] is DENIED, without prejudice.**

4) **Plaintiff's Motions to Request Counsel [4], [9] are DENIED, without prejudice.**

5) **This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions, to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.**

6) **The Court will attempt service on Defendants by mailing a waiver of service. Defendants have sixty days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.**

7) **If a Defendant no longer works at the address Plaintiff provided, the entity for whom that Defendant worked while at that address shall submit to the Clerk Defendant's current work address or, if not known, Defendant's forwarding**

address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8) Defendants shall file an Answer within sixty days of the date the Clerk sends the waiver of service. A motion to dismiss is not an Answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an Answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the Answer is necessary or will be considered.

9) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendants' counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

10) The Court grants Defendants' counsel leave to depose Plaintiff at his place of confinement. Defendants' counsel shall arrange the time for the deposition.

11) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.

12) If a Defendants fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on that Defendant. Formal service will require the Defendant to pay the associated costs under Federal Rule of Civil Procedure 4(d)(2).

13) The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.

14) The Court directs the Clerk to attempt service on Defendants under the standard procedures.

Entered on May 22, 2025.

<u>s/Colin Stirling Bruce</u>
COLIN S. BRUCE
U.S. DISTRICT JUDGE